REID, Judge.
Plaintiff originally filed suit against Mr. and Mrs. William C. Peak on December 5th, 1960, for damages as a result of a two truck accident which occurred on September 12, 1960 at 11:45 A.M. on Louisiana Highway 1027 in the town of Walker, Louisiana.
The plaintiffs propounded interrogatories to the defendants and learned that Mr. Peak’s insurer was the Home Indemnity Company. Plaintiffs then filed a supplemental petition, and made the Home Indemnity Company a defendant which supplemental and amended petition was filed on *334 January 20, 1961. On April 3, 1961 plaintiffs dismissed this suit insofar as William C. Peak and Mrs. William C. Peak were concerned. The matter came up before the Court as a direct action suit against Mr. Peak’s insurer, Home Indemnity Company.
The defendants filed an answer admitting their domicile and admitting the fact that a wreck had taken place, but set up that the wreck was caused by the driver of the track making an unsignalled left hand turn immediately in the path of Mrs. Peak and that she did everything possible to avoid the- accident.
Subsequently the defendants filed a Third Party petition, against George P. Smith, owner and driver of the track in which plaintiff, Mrs. Charles O. Wesley, was riding at the time of the accident alleging that the accident was caused solely by the negligence of George P. Smith in failing to keep a proper lookout, in failing to keep his truck under proper control and making a left hand turn immediately in the path of the Peak car which at that time was lawfully attempting to pass the Smith truck.
They allege in the alternative that if the Court should find that the accident was caused by the negligence of Mrs. Peak, which is denied, then they, the Third Party Plaintiff show that a concurrent and contributing proximate cause of the said accident was the negligence of the said George P. Smith as hereinabove set out.
The original suit asked for judgment in favor of Charles O. Wesley, as head of the community, for doctors’ bills and hospital bills in the total amount of $856.25 and for Mrs. Charles 0. Wesley for pain, suffering, etc., $5000.00.
George P. Smith, the Third Party Defendant filed an answer setting up that the accident was caused entirely by the negligence of Mrs. William C. Peak and denying any negligence on his part.
The Lower Court rendered judgment in favor of the plaintiff and against the Home Indemnity Company in the amount of $4000.00 to Mrs. Charles O. Wesley and $411.14 in favor of Mr. Charles O. Wesley and fixed the expert fees of three doctors at $50.00 each, and all costs of Court.
The facts show that on September 12, 1960 Mrs. Charles O. Wesley was riding with her father, George P. Smith, as a guest passenger in Smith’s 1947 Ford one-half ton pickup truck in a westerly direction on Highway 1027. Mr. Smith was attempting to make a left turn from the highway into the driveway of his home when the accident happened.
Mrs. Peak was driving her husband’s 1959 Ford pickup truck and was following the Smith truck. When Mr. Smith arrived at about 300 feet from the driveway into his home he says that he put out his hand to give the signal that he was going to make a left turn. This happened right in front of the home of Mrs. Elbert McCray, who testified that she saw him put out his hand in front of her house, but did not know if he kept it out the remaining part of the distance to the driveway. Mr. Smith testified that he did keep his arm out for the signal. He also testified that he was driving at about fifteen miles an hour. Mr. Smith further testified that he looked in the back before he put his hand out, and did not see any car approaching from the east, and that was the last time he looked back.
Mrs. Peak testified that she was driving about thirty-five miles an hour and saw the Smith truck ahead of her when she came around the curve by the Primes Building Materials. She was proceeding at a moderate rate of speed and she started to pass Mr. Smith, and at about that time he started angling for the turn going to- his driveway. When she saw what Mr. Smith was doing she turned her car back to the right in an attempt to go in the rear of the Smith truck and the front of her truck struck the left rear side of the Smith truck, turning it around back in the direction from which it was coming. According to the statement made in the record by the Court the witness, Mrs. Peak, indicated that the truck driven *335 by Mr. Smith was almost completely over in the lane going east and approaching the driveway at a forty-five degree angle and the truck being driven by Mrs. Peak was in a forty-five degree angle going northwest and struck the rear left hand corner of the Smith truck with the center of her truck.
The Smith truck had no indicator lights and Mrs. Peak testified that she did not see any indication whatever that Mr. Smith was going to turn. According to Mr. Stafford, the Marshal of Walker, the point of impact as shown by the dirt, glass, water and oil, was about a foot over the center of the road. The picture taken of the Smith truck, Plaintiff’s Exhibit No. 23, shows that the Smith truck would had to have been turning for the Peak truck to have struck it and caused the damages shown on the picture. While Mr. Smith testified that he kept his hand out indicating the signal to turn left for 300 feet until he started to make his turn, and Mrs. Wesley testified that he must have kept his hand out because she saw him put it out in the beginning, Mrs. Wesley in her statement to Mr. Stafford, the Marshal, stated that she was not sure but she thought Mr. Smith had his hand out, but it may not have been far enough for it to be seen.
LSA-R.S. 32:235, Subdivision A provides as follows:
“A. The driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.”
This principle of law places a responsibility on the driver of a car attempting to make a left turn across the highway to see that such a turn can be made safely and not to attempt to make a turn unless the way is clear.
Our Courts have followed this principle of law in any number of cases. The Court particularly in the case of Washington Fire and Marine Insurance Co. v. Firemans Insurance Company, 232 La. 379; 94 So.2d 295 held as follows:
“The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do "so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver ‘shall yield the right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.’ ” (See also Methvin v. Roshto, La.App., 96 So.2d 383; Guillory v. De Torre, La.App., 99 So.2d 378; Blanchard v. Ashby Construction Co., Inc., La.App., 95 So.2d 670; Service Fire Ins. Co. of New York v. Suezy, La.App., 77 So.2d 110; Ellis v. White, La.App., 73 So.2d 610; Martin v. Bruchhaus, La.App., 74 So.2d 316.)
This rule of law has also been interpreted that the giving of signal by turning motorist is immaterial if at the time motorist does not have the opportunity to make the turn in safety. See Callia v. Rambin, La.App., 78 So.2d 44.
. Counsel for plaintiffs cites numerous cases in his brief with which the Court has no quarrel, however, the Court does not feel that these cases are in point and do not apply to the facts of this case.
 We feel that it was the duty of Mr. Smith before attempting to make a lefthand turn to ascertain that the turn could *336 be made with reasonable safety and not interfere or block traffic in the other lane of traffic. He did not ascertain that there was a car in the rear which was going to pass, or attempt to pass him. The physical facts corroborate Mrs. Peak’s statement as to how the accident happened. The damage to different parts of the two trucks shows that the Smith truck was angling off to make the turn and was over the middle line of the highway and that Mrs. Peak turned right trying to pass it in the rear and struck it on the left rear side. The proximate cause of the accident was the negligence of the driver of the Smith truck in failing to keep the proper lookout and to ascertain whether he could make the turn with safety. We are loathe to reverse the judgment of the Lower Court unless there is manifest error, but we find from the testimony and the physical facts as shown by the picture in the record that the Judge was in error. For these reasons it is ordered that the judgment of the Lower Court be reversed and judgment rendered in favor of defendants, rejecting plaintiffs’ demand and dismissing this suit at their costs.
Reversed and rendered.