# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-66


WILLIAM BOYD

VERSUS

THE WACKENHUT CORPORATION, ET AL.


************

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. 602-00
HONORABLE ANNE SIMON, DISTRICT JUDGE PRO TEMPORE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and J. David Painter, Judges.


**REVERSED AND REMANDED.**

**Bernard N. Marcantel**
**Marcantel, Marcantel, Wall, Pfeiffer & Stretcher**
**Post Office Box 1366**
**Jennings, Louisiana  70546**
**Counsel for Plaintiff/Appellant:**
    **William Boyd**

**Frank S. Bruno**
**Bruno & Bruno**
**855 Baronne Street**
**New Orleans, Louisiana  70113**
**(504) 525-1335**
**Counsel for Plaintiff/Appellant:**
    **William Boyd**

**William B. Baggett**
**Roger G. Burgess**
**Baggett, McCall, Burgess, Watson & Gaughan**
**Post Office Drawer 7820**
**Lake Charles, Louisiana  70606-7820**
**Counsel for Plaintiff/Appellant:**
      **William Boyd**

**Samuel B. Gabb**
**Loftin, Cain, Gabb & LeBlanc**
**113 South Ryan Street**
**Lake Charles, Louisiana  70601**
**Counsel for Defendants/Appellees:**
      **American Home Assurance Company**
      **The Wackenhut Corporation**
      **Joseph Deville**

**SULLIVAN, Judge.**

Plaintiff, Leona Boyd, legal successor of her deceased son, William Boyd,[1] appeals the trial court's grant of summary judgment in favor of defendants, the Wackenhut Corporation (Wackenhut), American Home Assurance Company (American Home), and Joseph Deville. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of a motor vehicle accident that took place on August 18, 1999, at approximately 12:10 p.m. on Louisiana Highway 14 in Jefferson Davis Parish. William Boyd, then an inmate of the Wackenhut facility prison (Allen Correctional Center) in Kinder, Louisiana, was assigned to a prison work detail picking up trash along Highway 14 on the date in question.

As lunchtime approached, Boyd and the other inmates were told to load up their tools and to get into the prison van so that they could find a place to eat their lunch. Joseph Deville, an employee of Wackenhut, was the driver of the prison van. Attached to the van was a sixteen-foot trailer that was used to carry tools and supplies needed for the work detail. Immediately following the van and trailer was a dump truck, owned by the State of Louisiana, in which the inmates would load trash bags as they were filled. Upon finding a shady spot on the left side of Highway 14, Mr. Deville began to slow down and exit the highway to his left. As he did so, the left rear of the van was struck by a vehicle being driven by Rosalind Broussard as she was attempting to pass the vehicles ahead of her.

---

[1]After filing this suit, William Boyd died of causes unrelated to the injuries he allegedly sustained in the accident at issue. Thereafter, his mother, Leona Boyd, was substituted as plaintiff.

Claiming to have suffered severe personal injuries as a result of the accident, Boyd filed suit against the following defendants: Wackenhut, lessor of the van in which Boyd was a guest passenger; American Home, the alleged automobile liability insurer of Wackenhut; Mr. Deville; Ms. Broussard; and State Farm Mutual Automobile Insurance Company (State Farm), the alleged automobile liability insurer of Ms. Broussard. Boyd later dismissed his claims against Ms. Broussard and State Farm, having settled with those parties.

In July of 2007, a motion for summary judgment was filed by Wackenhut and Mr. Deville seeking dismissal of plaintiff's claims on the basis that the accident was caused solely by the negligence of Ms. Broussard, the driver of the overtaking automobile.[2] Specifically, defendants submitted that because Mr. Deville had turned on his left-turn signal, slowed down, and looked ahead of and behind his vehicle for approaching traffic prior to beginning his left turn, he had satisfied all of the legal duties imposed upon a left-turning motorist. They argued that because plaintiff will be unable to prove that Mr. Deville breached a legal duty owed to Mr. Boyd, both he and his employer, Wackenhut, were entitled to summary judgment in their favor.

In support of their motion, defendants attached excerpts from the depositions of Mr. Deville, Ms. Broussard, and Wayland Istre, the driver of the dump truck following the prison van. Defendants also submitted a true copy of a Minute Entry of the Thirty-First Judicial District Court, Jefferson Davis Parish, Louisiana, dated

---

[2]American Home also sought to have summary judgment granted in its favor because Wackenhut had rejected uninsured/underinsured motorist (UM) coverage in the policy it had procured from American Home. Plaintiff agreed to dismiss her claims against American Home for UM coverage but filed a motion for attorney fees against American Home for its delay in informing plaintiff that Wackenhut had rejected UM coverage. The trial court denied that motion, and plaintiff has not appealed that ruling.

2

September 18, 1999, indicating that Ms. Broussard had pled guilty to the charge of improper passing.

Plaintiff filed an "Objection to Motion for Summary Judgment" in which she argued that the evidence showed that Ms. Broussard had to pass an eighteen wheeler and the dump truck before reaching Mr. Deville's van. Plaintiff pointed to the deposition testimony of the dump truck driver who stated that he looked in his rearview mirror just before the accident, and he noticed Ms. Broussard's car coming around the curve, located approximately twenty to thirty yards behind the eighteen wheeler. Adding that distance to the length of the eighteen wheeler, the dump truck, and the van, along with the sixteen-foot trailer the van was pulling, plaintiff suggests that Ms. Broussard's vehicle was visible for about 150 feet prior to the occurrence of the accident. Therefore, plaintiff submitted that Mr. Deville failed to see what he should have seen, and, thus, his negligence was the sole cause of the accident. Accordingly, plaintiff argued that defendants' motion for summary judgment should be denied and that a jury should be allowed to determine the fault of defendants. Plaintiff attached to her opposition the complete depositions of Mr. Deville, Ms. Broussard, and Mr. Istre.

Following a hearing, the trial court granted defendants' motion for summary judgment and dismissed all of plaintiff's claims against them with prejudice, at plaintiff's cost.

Plaintiff now appeals, asserting two assignments of error. First, plaintiff claims that the trial court erred in granting a summary judgment to defendants because there is a genuine issue of material fact regarding the negligence of Wackenhut's driver in making a left turn off a public highway onto private property. Second, plaintiff

3

claims that the trial court was clearly wrong in granting a summary judgment in a situation where there is a serious factual dispute concerning the fault of the two drivers, a left-turning motorist and a motorist attempting to overtake other vehicles, although plaintiff was a guest passenger who was without fault.

## LAW

It is well settled that appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action . . . ." La.Code Civ.P. art. 966(A)(2).

Louisiana has enacted laws that set forth the duties imposed on a left-turning driver as well as a passing driver. Louisiana Revised Statutes 32:104, entitled "**Turning movements and required signals**," provides in pertinent part:

> A. No person shall . . . turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
>
> B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

The law with regard to a vehicle passing on the left is found in La.R.S. 32:75, entitled "**Limitations on passing on the left**," which provides in pertinent part:

4

No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.

La.R.S. 32:73 provides in pertinent part:

The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

(1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

In *Kilpatrick v. Alliance Casualty and Reinsurance Co.,* 95-17, p. 4 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, 66, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406, this court noted that the jurisprudence of this state recognizes that both "the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers." We stated that "[t]he onerous burden placed upon a left-turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal . . . is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety." *Id.* at 66. On the other hand, we observed that "the driver of an overtaking or passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety." *Id.* After applying the law to the facts of that case, we reversed the trial court's allocation of

5

fault of 70% to the overtaking motorist and 30% to the left-turning motorist. Finding that the left-turning motorist was the only person who could have avoided the accident, we cast him with 100% of the fault in causing the accident at issue in *Kilpatrick*. Significantly, we performed this re-allocation of fault despite our having found no manifest error in the trial court's finding that the left-turning motorist had signaled before beginning his left turn.

In *Star Dusters, Inc. v. Lee*, 311 So.2d 566 (La.App. 3 Cir. 1975), we held that where an overtaking automobile had already moved into the left lane and passed the two automobiles between it and left-turning vehicle, it was incumbent upon the driver of the left-turning vehicle to ascertain that the way was clear before turning left across the highway and into a private drive. Accordingly, we affirmed a judgment of the trial court finding the left-turning vehicle liable for property damages incurred by the overtaking motorist.

We have performed a de novo review of the record, including the evidence presented in favor of and against defendants' motion for summary judgment, and we conclude that the trial court erred in finding that no questions of material fact remained and that defendants were entitled to judgment as a matter of law. Regardless of whether or not Mr. Deville looked into his rearview mirror and signaled his intent to make a left turn, the fact remains that the left turn could not be safely completed given that Ms. Broussard was already well into her overtaking maneuver. Clearly, the accident was caused in part, if not entirely, by the fault of Mr. Deville. Accordingly, we remand this matter to the trial court for a determination of the proper allotment of fault between Mr. Deville and Ms. Broussard.

## CONCLUSION

For the above reasons, the judgment of the trial court is reversed at defendants' cost, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**